# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

---

**ROBERT HERRON,**

        **Plaintiff,**

v.                                             Case 2:18-cv-02862-JTF-cgc

**LOUIS DEJOY, Postmaster
General, United States Postal
Service,**

        **Defendant.**

---

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant Louis DeJoy's Motion for Summary Judgment. (Docket Entry ("D.E.") # 50). Pursuant to Administrative Order 2013-05[1], the instant motion has been referred to the United States Magistrate Judge for Report and Recommendation. For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED.

### I.  Introduction

On December 18, 2018, Plaintiff Robert Herron filed his *pro se* Complaint. (D.E. #1). Plaintiff alleges that he suffered discrimination on the basis of race (African American), color

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation.

(Black), and gender (male) and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"). (Compl. ¶¶ 1, 6, 9). Plaintiff has provided forty-eight pages of documents supporting of his Complaint. (*Id*. ¶ 10, Exh. 1 & Exh. 2). One such document—his EEOC Investigative Affidavit filed with the United States Postal Service ("USPS")—provides a factual summary of his allegations. (*See id*. ¶ 10 & Exh. 1, PageID 13-22).

II.   **Proposed Findings of Fact**[2]

---

[2]   Defendant filed its Statement of Undisputed Material Fact with its Motion for Summary Judgment. (D.E. #50-1). This document includes multiple facts in its numbered paragraphs in violation of Local Rule 56.1(a) ("Each fact shall be set forth in a separate, numbered paragraph."). It also includes certain information not contained in the cited evidence in violation of the same rule ("Each fact shall be supported by a specific citation to the record").

Although Local Rule 56.1 provides a clear procedure for Plaintiff to respond to Defendant's filing, Plaintiff has filed two documents within his approximately 850 pages of exhibits that purport to respond to Defendant's motion. Neither document complies with Local Rule 56.1 for several reasons.

First, Plaintiff filed a copy of Defendant's Statement of Undisputed Material Facts on which he has made various hand-written comments without any citations to evidence. (D.E. #54-28). The Court has disregarded this document.

Second, Plaintiff filed a Response to Defendant's Statement of Undisputed Material Fact. (D.E. #54-13). Plaintiff's Response intersperses his responses to Defendant's Statement of Material Fact with his own additional statements of material fact, which violates Local Rule 56.1(b) ("[T]he non-movant's response may contain a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried. Each such disputed fact shall be set forth in a separate, numbered paragraph . . . ."). Plaintiff's Response to Defendant's Statement of Undisputed Material Fact and Additional Statements of Fact also repeatedly fails to clearly cite to which exhibit in his voluminous submission of evidence he is referring, which also violates Local Rule 56.1 ("Each disputed fact must be supported by specific citation to the record").

Despite the highly confusing manner in which Plaintiff has filed his Response to Defendant's Statement of Undisputed Material Fact and Additional Statement of Undisputed Material Fact, Defendant filed a Response to Plaintiff's Additional Statements of Fact. (D.E. #55).

Plaintiff was hired by USPS on approximately August 9, 2013 as a Postal Support Employee ("PSE") Labor Custodian. (Def.'s Exhibit A ("Herron Dep."), filed at D.E. #50-2, at 34:3-5, 38:23-39:4). Plaintiff was interviewed for employment by then-Postmaster Gerald Dickerson ("Dickerson") and Dennis Lee ("Lee"). (Herron Dep. at 38:10-18). Lee, who is a white male, became Plaintiff's supervisor during his employment with USPS. (Herron Dep. at 40:1-3, 56:10-12). Plaintiff was assigned to the Ida B. Wells Post Office. ("Ida B. Wells PO"). (Herron Dep. at 39:5-8). Plaintiff was the only custodian at the Ida B. Wells PO. (Herron Dep. at 46:14-15). Plaintiff also worked as a PSE Labor Custodian at 110 Memphis City Post Office ("110 Memphis PO"). (Herron Dep. 39:9-17).

While Plaintiff was employed at USPS, there was only one custodian assigned to 110 Memphis PO—Donna Wagner ("Wagner"). (Herron Dep. at 46:19-25). Wagner was already working for USPS as a contractor prior to Plaintiff's start date with USPS. (Herron Dep. 44:25-45:3). When the post office later discontinued its use of contractors, Wagner was hired as a PSE Labor Custodian on September 20, 2014. (Herron Dep. at 45:6-20; Def.'s Exh. C ("Suman Decl.") at PageID 256 ¶ 2). Wagner was assigned to four hours per day at her location. (Herron Dep. at 129:12-16). It is undisputed that, from the period of May 11, 2015 through July 31,

---

Where at all practicable, the Court has attempted to determine to which exhibit Plaintiff is referring. It has done so by referring to his exhibit descriptions on the docket sheet as well as his summary of exhibits, the latter of which often does not contain titles consistent with the docket sheet but instead contains paragraph discussions of the documents. (D.E. #54-16). However, when this was not possible, this Report and Recommendation has considered the purported disputed facts that have no specific citations to evidence as undisputed for purposes of this motion.

2015, Plaintiff worked and was paid for more hours than Wagner. (Exhibits to Suman Decl. at PageID 262-288)[3]

Plaintiff was a member of the American Postal Workers Union ("APWU"). (Herron Dep. at 51:2-5). Plaintiff did not file any grievance with the APWU regarding discrimination at USPS. (Herron Dep. at 53:23-25; 89:20-23). However, he did file a Step One Grievance and Step Two Grievance with the APWU regarding compensation for certain higher-level tasks. (*See* D.E. #1-2 at PageID 37-PageID 38).[4] Specifically, Plaintiff states that he occasionally performed work outside his normal job duties, including those typically assigned to clerks such as traveling, carrying mail, handling express mail, and running errands. (Herron Dep. at 59:2-60:11). His grievance sought compensation at a higher rate for these clerk-level assignments. (*See* D.E. #1-2 at PageID 37-PageID 38). He further explains that he believed that this practice of "crossing the craft" was in violation of his union agreement; however, he did not complain about the actions of any particular individual. (Herron Dep. at 88:20-89:11). Plaintiff does not believe that there were any other allegations that should have been documented in his grievance. (Herron Dep. at 86:13-17).

---

[3] Defendant relies upon pay records that were made exhibits to the Suman Declaration in support of this statement of fact. Neither Defendant's Statement of Undisputed Material Fact nor Suman's Declaration provides guidance on how to decipher the hours recorded therein, and the Court declines to attempt to do so. Defendant's Memorandum in Support of its Motion for Summary Judgment provides certain calculations (*see* D.E. #50-5 at PageID 296), but as Plaintiff was not given an opportunity to dispute the calculations and as it is impossible for the Court to verify these figures with any degree of certainty given the manner in which the records are formatted, the Court will not rely on any specific calculations of hours comparing Plaintiff's and Wagner's respective pay during these periods in this Report and Recommendation.

[4] The parties do not cite evidence stating the dates of the grievance process. The evidence provided appears to show that the Step One Grievance was filed on May 2, 2014 and resolved on May 16, 2014. (*See* D.E. #1-2 at PageID 38). The Step Two Grievance was resolved on May 26, 2014. (*See id*. at PageID 37).

After Plaintiff filed the grievance, he was paid at the higher level for work outside his craft. (Herron Dep. at 59:2-25). Plaintiff was satisfied with his union representation in the grievance process. (Herron Dep. at 88:17-19). However, Plaintiff believes that his relationship with Lee "began to go south" after he filed the grievance. (Herron Dep. at 59:2-5). Specifically, Plaintiff states that Lee stopped using him for "outside work." (Herron Dep. at 60:1-4).

On August 9, 2014, Herron was converted from a PSE Laborer Custodial to a Part Time Regular ("PTR") Custodial. (Suman Decl. ¶ 3). A PSE does not have a set schedule while a PTR career employee does. (*Id.*)

At some point after Plaintiff filed the grievance, Dickerson, who is a Black male, informed him that his hours would be reduced from the "forty hours plus" he worked before the grievance to twenty-five (five hours per day). (Herron Dep. at 72:1-4, 76:14-77:5, 77:15-16). Dickerson told Plaintiff that this change was due to a "shortage of hours." (Herron Dep. at 72:1-4; 143:14-21). Plaintiff believes that his hours were in fact reduced because he filed the grievance. (Herron Dep. at 76:23-77:5). Plaintiff contends that his change in designation from PSE to PTR facilitated this retaliation. (Herron Dep. 125:6-15, 142:17-21). However, Plaintiff also states that the PSE position is one that he would prefer to "hurry up and want to get out of" and that he would rather be a career employee and not a PSE. (Herron Dep. at 156:10-23). Plaintiff states that he never informed anyone that he did not want to be converted from PSE to career PTR. (Herron Dep. at 156:6-9).

At another point after he filed his grievance, he worked additional hours at a post office in Cordova; however, his supervisor told him that he was not allowed to work outside of his district and that they do not "loan custodians out." (Herron Dep. at 47:20-48:24).[5]

While Plaintiff was a PTR Labor Custodian, there were occasions when he replaced flat tires and blown bulbs on LLV vehicles. (Herron Dep. at 114:15-24). Plaintiff states that he may have done other tasks that he did while he was a PSE, such as the following: daily loading and unloading tub mail; traveling out of town to deliver and pick up mis-sent mail; storing equipment; picking up and returning financial reports; delivering late express mail; handling undeliverable bulk business mail duties; assisting customers with parcels; de-icing postal vehicles; and, setting up clerk stations. (Herron Dep. at 110:9-118:9). Plaintiff does not believe that other employees were permitted to perform these duties more than he was. (Herron Dep. at 117:15-19).

Also, while Plaintiff was a PTR Labor Custodian, he requested permission on one occasion to pick up additional hours by cleaning postal vehicles. (Herron Dep. at 118:10-119:2, 119:6-11). Plaintiff's request was denied because the task was being assigned to Wagner. (Herron Dep. at 119:3-120:6).

On October 7, 2018, Plaintiff became a full-time Laborer Custodian. (Suman Decl. ¶ 4 & Suman Decl. Exh. 3, filed at D.E. # 50-4, PageID 260). As a full-time employee, he worked at least thirty-eight hours per week. (Herron Dep. at 49:22-50:12). Plaintiff did not have concerns or complaints about his full-time employment at USPS. (Herron Dep. at 163:2-5). Plaintiff voluntarily resigned from his employment with USPS on August 30, 2019 when he was eligible

---

[5] Defendant's Statement of Undisputed Material Fact sets forth further facts regarding employees cleaning other locations; however, some do not contain citations to the record, and one cites evidence not contained in the record. (*See* Def.'s Statement of Undisputed Material Facts ¶¶ 20-21).

for retirement. (Herron Dep. at 163:6-15). At no other point during his employment with USPS did he go through the EEO process. (Herron Dep. at 91:2-5).

### III. Proposed Conclusions of Law

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The moving party can prove the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. *Id*. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the nonmoving party's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., *Federal Practice and Procedure* § 2727 (2d ed. 1998).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### A. Title VII Discrimination

Under Title VII, discrimination of the basis of "race, color, religion, sex, or national origin" constitutes an unlawful employment practice. 42 U.S.C. § 2000e-2(a). A plaintiff may establish a claim of disparate treatment based upon race either by introducing direct evidence of discrimination or by proving circumstantial evidence which would support an inference of discrimination. *Kline v. Tennessee Valley Auth.,* 128 F.3d 337, 348 (6th Cir. 1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct-evidence approach, a plaintiff must present evidence that, "if believed, *requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 2000). To successfully pursue a direct-discrimination claim, the evidence must establish, *without any inferences or presumptions*, that discriminatory motives caused the adverse employment action. *Nguyen v. City of Cleveland*, 229 F.3d 59, 563 (6th Cir. 2000); *see*

*also Brack v. Shoney's, Inc.,* 249 F. Supp. 2d 938, 947 (W.D. Tenn. 2003). If the plaintiff introduces evidence of an adverse employment action on the basis of his protected status, the burden of persuasion shifts to the employer to prove that it would have taken the adverse employment action even had it not been motivated by discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45 (1989)).

Under the circumstantial evidence approach, the tripartite test established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and later clarified in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), applies to determine if the conduct violated Title VII. First, a plaintiff must establish a prima facie case of discrimination, which requires as follows: (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was treated differently than similarly situated, non-protected employees. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).

If plaintiff establishes the prima facie case, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. If the defendant meets this burden, then a plaintiff must prove that the reason proffered by the defendant is a pretext to hide unlawful discrimination. *Id.* The plaintiff may establish that the proffered reason is a mere pretext by showing that the stated reasons had no basis in fact, that the stated reasons were not the actual reasons, and that the stated reasons were insufficient to explain the defendant's action. *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason

was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993).

### a. Whether Plaintiff Suffered an Adverse Employment Action

First, Defendant asserts that Plaintiff's discrimination claim should fail because he did not suffer an adverse employment action. In order to set forth a claim of discrimination, a plaintiff must show that he has suffered a "materially adverse" change in the terms or conditions of his employment because of the employer's actions. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000). "An adverse employment action requires a loss of pay or benefits, a detrimental change in responsibilities, a negative change in the terms or conditions of employment, or some other actual or unfavorable change in job status." *Blackburn v. Shelby County*, 770 F. Supp. 2d 896, 921 (W.D. Tenn. 2011). While mere inconveniences or an alteration of job responsibilities does not constitute an adverse employment action, *Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 886 (6th Cir. 1996) (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)), changes in the number of work hours can constitute adverse employment actions, *Id.* (citing *Spees v. James Marine, Inc.*, 617 F.3d 380, 391 (6th Cir. 2010)); *see also Kocsis v. Multi-Care Mgmt.*, 97 F.3d 876, 885 (6th Cir. 1996).

Here, it is undisputed that Plaintiff's hours were reduced at some point after August 2014 from forty hours or more per week to twenty-five hours per week. Further, it is undisputed that Plaintiff was not permitted to work hours outside of his district and was denied the opportunity on one occasion to work hours cleaning postal vehicles. While there is no evidence in the record as to how many hours of work were available for these latter opportunities, it is RECOMMENDED that Plaintiff's overall reduction in work hours per week alone is sufficient to

constitute an adverse employment action. *See Abraham Pettway v. Logistics Solutions Group, Inc.*, No. 3:17-cv-73-DJH-CHL, 2020 WL 981712, at *10 (W.D. Ky. Feb. 28, 2020) (holding that being reduced from full-time to part-time hours constitutes an adverse employment action).

### b. *Whether a Similarly Situated Employee was Treated Differently than Plaintiff*

Next, Defendant asserts that Plaintiff and Wagner were not similarly situated during the time periods relevant to this case. It is undisputed that the adverse employment actions occurred after August 2014 when Plaintiff was converted from PSE to PTR but before he was converted from PTR to a full-time position in October 2018. At the beginning of this time period, Wagner was a contractor rather than an employee of USPS. In September 2014, when Plaintiff had already become a PTR, Wagner was hired as a PSE. Thus, at no time during the relevant period did Plaintiff and Wagner hold the same position.

While it is not required that both employees hold the exact same position to be considered "similarly situated," *see Anthony J. Williams v. Best Buy Stores, L.P.*, No. 3:07-0294, 2008 WL 752639, at *5 (M.D. Tenn. Mar. 19, 2008), they must be similarly situated in "all *relevant* respects," *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original). Here, it is undisputed that PSEs do not have a set schedule while a PSR does. Thus, when Plaintiff's discrimination centers upon the number of hours which he worked, it is RECOMMENDED that the manner in which hours are assigned to differing designations of employees is especially relevant. *See, e.g. Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (stating that the plaintiff and the individual with whom he seeks to compare his treatment must have "been subject to the same standards"). Further, to be similarly situated, the plaintiff and the other individual must have the same supervisor, *see id*. Here, there

is no evidence in the record as to whether Lee supervised Wagner or not. Thus, it is RECOMMENDED that Plaintiff and Wagner are not similarly situated.

Further, even if Plaintiff were found to be similarly situated to Wagner, Plaintiff must have been treated differently to his detriment to satisfy the *prima facie* case. Yet here, it is undisputed in the record that Plaintiff was assigned to work five hours per day while Wagner was assigned to work four hours per day. There is no evidence in the record as to how many hours Wagner worked above her standard workweek to determine that she was treated differently. Further, it is undisputed that, from May 11, 2015 to July 31, 2015, Plaintiff worked more hours than Wagner. Accordingly, it is RECOMMENDED that Plaintiff the evidence does not present a genuine dispute of material fact as to whether Plaintiff differently from Wagner in a way that was detrimental to him. Thus, it is RECOMMENDED that Plaintiff has failed to satisfy his *prima facie* case of Title VII discrimination and that this claim fails as a matter of law.

### c. Whether USPS had a Legitimate, Non-Discriminatory Basis for the Adverse Employment Action and Whether USPS's Proffered Basis is Pretextual

Even if Plaintiff were to have satisfied his *prima facie* case, USPS has brought forth evidence articulating a legitimate, non-discriminatory reason for reducing plaintiff's hours—namely, that there was an overall shortage of hours. More importantly, Plaintiff's own testimony that the reduction in his hours was not based upon his race, color or gender is undisputed:

Q. So you believe that you should have been allowed to work 8 hours a day all the time?

A. That's right.

Q. And is it your belief that Mr. Dickerson stopped you from doing so because of your race?

A. It didn't start until after I filed the grievance.

Q. So not because of your race, but because of the grievance?

12

  A. The retaliation started after then . . . .

(Herron Dep. at 76:23-77:5).

  Thus, it is RECOMMENDED that USPS has set forth a legitimate, non-discriminatory basis for reducing Plaintiff's hours and Plaintiff has not only failed to proffer evidence that it is pretextual but has stated himself that the change in hours was not due to his race, color, or sex. Thus, it is RECOMMENDED that Plaintiff's Title VII discrimination claim also fails as a matter of law for these reasons.

  ***b. Title VII Retaliation***

  Title VII prohibits retaliation against an employee because that employee has engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e-3(a). As with a Title VII discrimination claim, a Title VII retaliation claim can be established either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support such an inference. Here, there is no direct evidence that Plaintiff suffered retaliation for his protected activity. Thus, Plaintiff's claim must be addressed under the *McDonnell Douglas* framework set forth above.

  Under *McDonnell Douglas*, Plaintiff bears the initial burden to establish a *prima facie* case of retaliation, which requires that he demonstrate as follows: (1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to plaintiff; and, (4) a causal connection existed between the protected activity and the materially adverse action. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citations omitted). If Plaintiff succeeds in proving the elements of a *prima facie* case, the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory reason for its actions. *Id*.

If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was not the true reason for the employment decision. *Id*. (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

Here, Plaintiff argues that USPS retaliated against him for filing a grievance with APWU regarding compensation for higher-skill work. His union grievance did not allege discrimination on the basis of race, color, or sex, retaliation, or any other conduct prohibited by Title VII. It is undisputed that Plaintiff does not believe that there were any other allegations that should have been documented in his grievance. Further, at no other point during his employment with USPS did he go through the EEO process or take part in any activity protected by Title VII. Accordingly, it is RECOMMENDED that Plaintiff's Title VII claim for retaliation fails as a matter of law.

### IV. Conclusion

For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion for Summary Judgment be DENIED.

**SIGNED** this 29th day of July, 2021.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**